Marc Steven Applbaum, Esq. SBN #222511
MIDWAY LAW FIRM APC
4275 Executive Square Suite 200
LA JOLLA, CA 92037
760 484-1203
marc@midwaylawfirm.com

Attorney for PLAINTIFF VARSOBIA HOME CARE SERVICES, LLC

**DISTRICT COURT OF THE UNITED STATES**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VARSOBIA HOME CARE SERVICES, LLC | **Case No**: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| vs. | **1. WRONGFUL FORECLOSURE**<br>**2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**3. NEGLIGENCE** |
| COMMERCIAL BORROWING FUND, LLC, LLC, SABLES LLC, DOES 1 through 50, Inclusive. | **(TRO REQUESTED)**<br>**JURY TRIAL DEMANDED** |
| Defendants. | |

- 1 -
VARSOBIA HOME CARE SERVICES, LLC FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
2-14-2026

VARSOBIA HOME CARE SERVICES, LLC alleges as follows:

**PARTIES**

1. VARSOBIA HOME CARE SERVICES, ("Plaintiff") is at all times relevant to the facts herein residing and doing business in this district.

2. Plaintiff is informed, believes and alleges that Defendant COMMERCIAL BORROWING FUND, LLC, "SERVICER") and at all times relevant to the facts herein incorporated in the state of Nevada doing business as a hard money servicer.

3. Plaintiff is informed and believes and based thereon alleges that Defendant SABLES LLC is, and at all times relevant to the facts herein registered in the state of Nevada doing business in this district as a foreclosure trustee.

4. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiff who sued each Defendant by such fictitious names. Plaintiff are informed and believe and based thereon alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for events and happenings referred to herein, either contractually or tortuously. When Plaintiff ascertains the true names of capacities of DOES 1 through 50, she will amend this complaint accordingly.

6. Plaintiff are informed, believe and alleges that Defendants and each of them, are, and at all times herein were, the agents, joint ventures, officers, members, representatives, servants, consultants or employees of their co-defendants, and in committing the acts herein allege, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-defendants.

**JURISDICTION AND VENUE**

7. This Court has diversity jurisdiction over this matter as there is complete diversity of citizenship and the amount of controversy between the parties and that the claim is in excess of $75,000.00 in accordance to 28 USCS § 1332.

8. In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court original jurisdiction in all supplemental claims pursuant to 28 USCS § 1367.

7. Defendants herein purposefully directed their activities in this district. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Los Angeles out of which this action arises and which form the basis of this action.

8. Defendants either are entities duly licensed to do business in the State of Nevada or are entities that regularly conduct business within this judicial district within California.

9. Venue is proper for this Court since the Subject Property is located in this district because events or events out of which this action arises and which form the basis for this action arise in this district.

10. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the Plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987)

11.     Defendant failed to comply with the statutory requirements for foreclosure under , Nev. Rev. Stat. Ann. § 107.080 including but not limited to providing proper notice of default and election to sell . Edelstein v. Bank of N.Y. Mellon, 128 Nev. 505.

12. Defendant's actions were further tainted by fraud, oppression, or unfairness, as evidenced by [describe specific irregularities, e.g., failure to provide required documentation, improper notice, or other procedural deficiencies]. Edelstein v. Bank of N.Y. Mellon, 128 Nev. 505, U.S. Bank v. Res. Grp., LLC, 135 Nev. 199

## FACTUAL BACKGROUND

11. On or about November 17, 2022, Plaintiff obtained a loan in the amount of $633,750.00. As evidence of the loan, Plaintiff executed a promissory note ("Note"), and concurrently executed Deed of Trust ("Deed of Trust") as security for the Note. The Deed of Trust for the Subject Property was recorded as Document No.1064 in the Official Records of the Clark County Recorder's Office.

12. Subject Property is zoned as a Single Family Residence built in 1997 with 6 bedrooms and 3.5 baths located at 4300 Del Monte Avenue, Las Vegas, Nevada 89102. ("Subject Property")

13. Subsequently, Plaintiff began experiencing economic hardship and a decreased ability to keep up on the mortgage and spent time consistently attempting to keep up on payments all while working to stabilize its financial situation.

14. On or about September 25, 2025 Defendants caused to be recorded a Notice of Default after recording and Assignment of Deed of Trust purported to transfer the beneficial interest under the Deed of Trust and the Notice of Default was recorded at the Clark County Recorder.

15. The NOD contains a boilerplate language provided by a hard money lender that makes high interest loans to borrowers as non consumer loans to circumvent laws that protect borrowers from predatory financing that are designed to fail.

16. At no point did servicer encourage Plaintiff to apply for assistance or provide Plaintiff with an exhaustive list of what opportunities that may be available prior to the recording of the NOD. At the time, servicer maintained the only option was to execute an extension agreement.

17. At all times material Plaintiff followed up weekly for status updates. At this point, they became significantly worried that the prolonged review period, continuing to build upon the default, would ultimately disqualify him for modification leaving him with no opportunity to catch up on his payments.

18. Plaintiff alleges that its terms and conditions are predatory, unreasonable and unconscionable.

19. At no time was Plaintiff advised that its mortgage note had been sold to an investor or did the new investor or servicer contact him with loss mitigation options in violation to Nevada law.

20. On January 26, 2026, Trustee recorded a Notice of Trustee Sale in the amount of $810, 385.00 in Document 989 at the Clark County Recorder's Office.

21. Subsequently Plaintiff attempted to pay off the Servicer by engaging a real estate listing agent that has lowered the purchase price.

22. Plaintiff alleges that Servicer has refused to postpone the Trustee Sale on February 18, 2026 to allow him to sell or refinance its property and pay off his debts secured by the Subject Property affecting his credit rating and ability to purchase and finance a new property.

23. Plaintiff alleges that "Servicer" is acting in bad faith on the basis that he has significant equity in the "Subject Property" no less than $170,000.00.

# FIRST CAUSE OF ACTION
# WRONGFUL FORECLOSURE

(Against All Defendants)

24. Plaintiff hereby incorporate by this reference paragraphs 1 through 23, as though fully set forth herein.

25. Under Nevada law, a wrongful foreclosure claim arises when a foreclosure is conducted without a valid default or in violation of statutory requirements. *22Collins v. Union Fed. S&L Ass'n, 99 Nev. 284.*

26. Plaintiff(s) allege that Defendant wrongfully foreclosed on the Property in violation of Nevada law, including, but not limited to Nev. Rev. Stat. Ann. § 40.430. and *Nev. Rev. Stat. Ann. § 107.080.*

28. Under Nevada law, a wrongful foreclosure claim arises when a foreclosure is conducted without a valid default or in violation of statutory requirements. *Edelstein v. Bank of N.Y. Mellon, 128 Nev. 505, Collins v. Union Fed. S&L Ass'n, 99 Nev. 284.*

29. Defendant wrongfully foreclosed on the Property despite Plaintiff's compliance with the loan terms and/or Defendant's failure to comply. *Nev. Rev. Stat. Ann. § 107.080, Edelstein v. Bank of N.Y. Mellon, 128 Nev. 505.*

30. Defendant's actions caused Plaintiff to suffer damages, including but not limited to the loss of the Property, emotional distress, and financial harm.

## Count II: Declaratory Relief

31. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

32. Plaintiff seeks a declaration that the foreclosure sale was void or voidable due to Defendant's failure to comply with statutory requirements and/or the absence of a valid default. *Edelstein v. Bank of N.Y. Mellon*, 128 Nev. 505, *U.S. Bank v. Res. Grp., LLC*, 135 Nev. 199.

## Count III: Injunctive Relief

33. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

34. Plaintiff seeks injunctive relief to prevent Defendant from taking further action to interfere with Plaintiff's possession of the Property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. A declaration that the foreclosure sale is void or voidable;
2. An order setting aside the foreclosure sale;
3. Compensatory damages in an amount to be determined at trial;
4. Punitive damages as allowed by law;
5. Injunctive relief preventing Defendant from taking further action against the Property;
6. Attorneys' fees and costs; and
7. Such other and further relief as the Court deems just and proper.

# SECOND CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
(Against ALL Defendants)

30. Plaintiff hereby incorporate by this reference paragraphs 1 through 29, as though fully set forth herein.

31. Defendant's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under Nevada law. This covenant creates an obligation in Defendant not to hinder or prevent Plaintiff's ability to perform under the contract or receive the benefit of the contract.

32. On or about November 17, 2022, Plaintiff entered into a loan agreement, executing a Promissory Note and Deed of Trust and subsequently Defendant SERVICER. Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing and interfered with Plaintiff's ability to perform under the contract by inducing Plaintiff into a prolonged review period for assistance whereby SERVICER would not accept Plaintiff's monthly payments. SERVICER further effectively precluded Plaintiff from qualifying for loan modification by miscalculating Plaintiff's monthly income, relying upon inaccurate appraisals, and refusing to remedy their indiscretions.

33. For years, Plaintiff substantially performed under its loan agreement, making its monthly payments on time and in full every month. Plaintiff experienced a short period of financial hardship only to get back on his feet and retain the ability to afford the home.

34. However, when Plaintiff's hardship ended, SERVICER effectively precluded Plaintiff from performing under the contract by refusing to provide a timely and accurate review despite recognizing Plaintiff's ability to become current and execute an extension agreement.

35. Therefore, because SERVICER induced Plaintiff not to perform under the contract, Plaintiff's performance was excused as set forth under Nevada law and Cal. Civ. Code § 1511, which states if a defendant does some act naturally tending to induce the Plaintiff not to perform, the Plaintiff's failure to perform is excused. *See Boring v. Nationstar Mortg., LLC*, 2014 WL 5473118 (E.D. Cal. Oct. 28, 2014) (servicer's inducement of borrower's delinquency excused borrower's performance under the deed of trust).

35. When a party is excused from performing, he is entitled to all the benefits of the contract had it been performed by both parties. As such, no conditions existed that would interfere with Defendant performing under the contract, and all conditions necessary for Defendant to fulfill its obligations under the contract had occurred when Defendant coerced Plaintiff to stay behind on his payments at the mercy of Defendant's negligent and prolonged review. In fact, this promise was designed to induce and coerce Plaintiff to miss payments so that Defendant could foreclose on Plaintiff's loan and refused to accept mortgage payments on its payment portal starting on July 1, 2024.

36. As a proximate result of Defendant's acts and practices, Plaintiff's credit has been detrimentally impacted, and Plaintiff now risks the loss of his home through foreclosure.

37. Plaintiff has incurred contract damages, according to proof at trial, attorney's fees, costs to save the home, and loss of equity.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
(Against ALL Defendants)

38. Plaintiff hereby incorporate by this reference paragraphs 1 through 38, as though fully set forth herein.

39. The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50Cal.Rptr.2d 309, 911 P.2d 496].)

40. At all times relevant herein, Defendants, acting as Plaintiff's lenders and servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiff the real status of any foreclosure actions taken by it, refraining from taking any action against Plaintiff outside its legal authority, and providing all relevant information regarding Plaintiff's loan accounts with Defendants.

41. In *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014), the court found that, though a servicer is not obligated to initiate the modification process or to offer a modification, once it agrees to engage in the process with the borrower it owes a duty of care not to mishandle the application or negligently conduct the modification process. *See also*, *Ware v. Bayview Loan Servicing, LLC,* 2013 WT 6247236, at *9 (S.D. Cal. Oct. 29, 2013) [denying motion to dismiss borrower's negligence claim because servicer may owe a duty of care to maintain proper records and timely respond to modification applications].

42. Accordingly, by engaging in protracted loan modification negotiations with Plaintiff, Defendants owed Plaintiff a duty to conduct honest, timely and accurate evaluations of Plaintiff's loan modification applications and to carefully handle Plaintiff's sensitive financial and personal information contained in those applications.

43. It is true that some courts have held that in the standard lender/borrower relationship, a duty of care is not necessarily created. For instance, the court held in *Nymark v. Heart Federal*

*Savings & Loan Association*, 231 Cal. App. 3d 1089, l095 (1991) that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

44. However, the *Nymark* court simply found that a duty was not owed under the facts in that case after analyzing them pursuant to the six part test established in *Biakanja v. Irving*, 49 Cal2d 647, 122 P.2d 294, which looks to (1) the extent to which the transaction was intended to affect the Plaintiff, (2) the foreseeability of harm to the Plaintiff, (3) the degree of certainty that the Plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame, and (6) the policy of preventing future harm.

45. In analyzing the first *Biakanja* factor, whether or not the transaction was intended to affect the Plaintiff, courts have held that a defendant's conduct is found to affect the Plaintiff if the defendant commits the conduct with knowledge of Plaintiff's circumstances. *See e.g., Jolley v. SERVICER Financial, LLC* (2013) 213 Cal.App.4th 872, 900.

46. Here, by stringing Plaintiff along for years in pursuit of a modification or workout, Defendants undeniably intended to affect Plaintiff. Defendants knew that prolonging Plaintiff's review period for years would forever change her status regarding her mortgage for the worse.

47. Defendants should have foreseen the harm being done to Plaintiff due to their knowledge and expertise in the financial industry as well as complete control over Plaintiff's loan and loan modification review process. Further, it only requires common sense to determine that (1) if a lender decides to commence foreclose on a borrower's home without first providing the borrower a written determination of the borrower's loan modification application, or advise her of her appeal rights, the ensuing foreclosure will ultimately harm the borrower; and (2) that a borrower's credit will be

harmed and the borrower will owe more in arrears the longer a lender drags out stalls the loan modification process. Thus, foreseeability of harm is clear.

48. The foreseeability of harm to Plaintiff was high because the failure to work with Plaintiff as promised, and the failure to provide a timely, accurate, and good faith loan modification review, has caused Plaintiff to be in real danger of losing her home and having her credit destroyed, not to mention limiting her options to those that will only benefit Defendants in the long run. Plaintiff has been injured and his credit has been destroyed, he lost the ability to cure the delinquency on his loan, and faces the imminent danger of losing his home despite his illustrated ability to SERVICER that he can afford the payments coupled with that Servicer refused to accept mortgage payments since July 1, 2024 on its payment portal platform.

49. In regard to the closeness of the connection between Defendants' conduct and Plaintiff's damages, Defendants' conduct was firmly and intimately tied to the harm because but for the actions and omissions of Defendants, Plaintiff would not be facing imminent foreclosure of his home. His financial hardship ended more than two years ago. Because Defendants were in full control of the loan modification process, it is reasonably foreseeable that Plaintiff would rely on Defendants to conduct a good faith loan modification review and would not seek other alternatives to prevent foreclosure of the home or mitigate the debt owed under California law.

50. In regard to moral blame, Defendants' conduct was morally reprehensible as they acted without any regard for distressed homeowners, including the Plaintiff, who tried desperately to save the Property from foreclosure prior and subsequent to a national recession.

51. SERVICER was uncommunicative and left Plaintiff in the dark for months while continuing to build upon the loan's default. SERVICER's recording of the NTS prior to providing a

decision for Plaintiff's application evidences the type of conduct that the legislature has enacted codes to prevent. Subjecting a borrower to dual tracking is illegal conduct that reinforces the view that Defendants' conduct was blameworthy. *See Ansanelli v. JPMorgan SERVICER Bank, N.A.*, No 10-cv-03892-WHA, 2011 WL 1134451, at *1.

52. Furthermore, at the time Defendants made their representations and/or omissions to Plaintiff as alleged above, they knew, or had reason to know, that said representations and/or omissions were in fact false, and nevertheless made them with the intent to defraud Plaintiff and cause Plaintiff to believe her home would not be foreclosed upon. Had Plaintiff known the true facts, that Defendants never intended to offer a permanent modification, Plaintiff would have pursued other available legal remedies to protect her interests and would not have spent years in review for assistance only to be improperly denied base upon falsities.

54. In analyzing the final *Biakanja* factor, the policy of preventing future harms, it is undisputedly clear that public policy encourages lenders and borrowers to work together to prevent a borrower from defaulting on his or his loan. *See Jolley,* 213 Cal.App.4th at 903 (the ongoing financial crises has caused the federal government to adopt programs that encourage lenders and borrowers to work together to prevent a borrower from defaulting on its loan). Here, any assistance Defendants offered to Plaintiff was done in bad faith and without any controls or supervision to ensure that Plaintiff would not be left worse off as a result of the loan modification application process.

55. Based on the foregoing, it is exceedingly clear that the *Biakanja* factors favor imposing a duty of care on Defendants, as their actions and conduct have gone beyond the role of a mere money lender.

56. Defendants breached their duty of care owed to Plaintiff by partaking in the following unreasonable conduct that caused injury to Plaintiff:

a. Defendants unfairly handled Plaintiff's loan modification applications by unreasonably delaying the review process and repeatedly requesting duplicative documents and supplemental information;

b. Defendants improperly reviewed Plaintiff's financials not once but twice, leaving Plaintiff to deal with excessive arrearages due to Defendants prolonged review;

c. Defendants negotiated opportunities to receive assistance and even make down payments without intending to follow through on promises;

d. Defendants relied upon miscalculations in reviewing Plaintiff for assistance, including the use of inaccurate appraisals;

e. Defendants negligently pushed Plaintiff further into an unrecoverable default by refusing to accept payments and allow Plaintiff to become current on the Note.

57. Additionally, Defendants violated statutes that serve as the underlying violations for liability under the doctrine of negligence per se.

82. These statutes were enacted by the Nevada legislature specifically to protect the rights of innocent property owners suffering from financial hardships. These statutes were also enacted by the California legislature specifically to prevent the same injury that Plaintiff will imminently suffer: wrongful foreclosure and subsequent eviction resulting from a wrongful foreclosure.

83. The actions of Defendant are summarily denied Plaintiff of any opportunity to utilize the avenues at its disposal to avoid the loss of his property.   Defendant's actions, therefore, are a substantial factor in Plaintiff's harm.

84.     Defendants' violations directly and proximately caused the injuries suffered by Plaintiff. But for SERVICER's promising Plaintiff and assistance and an accurate and timely review, Plaintiff would not have spent so much time and resources working towards the modification.  Additionally, had Defendants' complied with the aforementioned laws to begin with, Plaintiff would not have suffered the very injuries that give rise to this Complaint because they would have been able to successfully pursue and obtain a non-foreclosure alternative and remain current on its loan.

85.     Due to Defendants' negligent conduct Plaintiff suffered monetary loss, severe emotional stress at the impending loss of Plaintiff's home, loss of home equity, damaged credit, and more.

86.     Plaintiff demand damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1. A declaratory judgment and order of this Court that:

(A) Defendants, and each of them, may not foreclose on the Property until they have honored and proven that all statutory requirements stemming from and relating to Plaintiff's options to avoid foreclosure have been met.

(B)  That Defendants failed to abide by their own guidelines in qualifying or reviewing Plaintiff for a loan modification in violation of Civil Code §2923.6.

(C) That Defendants and each of them, failed to provide the required statutory notifications and undertake the required courses of action as mandated under California Civil Code.

2. For a temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from engaging in unlawful and deceptive acts and practices of foreclosing on property of California homeowners, including Plaintiff, without considering her for within their guidelines, and when anticipated recovery through a modification or workout plan exceeds anticipated recovery through foreclosure on a net present value basis.

3. For disgorgement of Defendants' illegal profits and gain, including but not limited to all foreclosure fees and costs charged California homeowners, including Plaintiff.

4. For an award of actual damages in an amount within the jurisdictional limits of this Court to be proven at trial.

5. For general damages, according to proof.

6. For special damages, according to proof.

7. For consequential damages, and incidental damages, according to proof.

8. For an award of reasonable attorney's fees pursuant to agreement of the parties, according to proof.

9. For an award of interest, including prejudgment interest, as provided by law.

10. For costs of suit; and

11. For such other relief as the Court deems just and proper.

DATED: February 17, 2026                    MIDWAY LAW FIRM APC

/s/ Marc Steven Applbaum
_____
MARC STEVEN APPLBAUM
Attorney for Plaintiff

## VERIFICATION

I, MARC STEVEN APPLBAUM am counsel for the PLAINTIFF that is outside of the county and unavailable to review complaint due to trustee sale on February 18, 2026. Upon information and belief, I avow that the facts herein are within my knowledge and to the contents thereof. The same is true of my knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters are believed to be true.

I declare under penalty of perjury that the foregoing allegations true and correct and that this Verification was executed in San Diego County, California.

DATED: February 17, 2026            s/s Marc Steven Applbaum
                                    MARC STEVN APPLBAUM